UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LOUIS VUITTON NORTH AMERICA, INC.       :
                                        :
                    Plaintiff,          :
                                        :         **MEMORANDUM & ORDER**
            -against-                   :         17-cv-7445 (DLI)(PK)
                                        :
SCHENKER S.A., AIR FRANCE, and          :
CARGO AIRPORT SERVICES USA, LLC,        :
                                        :
                    Defendants.         :
------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

Plaintiff Louis Vuitton North America, Inc. ("LVNA") filed this action under the Montreal Convention, an international treaty governing certain air carriage, seeking damages related to the alleged theft of a shipment of luxury leather goods from the warehouse of defendant Cargo Airport Services USA, LLC ("CAS"). *See*, The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) ("Montreal Convention"), *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000).

This matter is before the Court on CAS's and Air France's motion for judgment on the pleadings and motion for a stay. For the reasons set forth below, the motion for judgment on the pleadings is granted to the extent that LVNA's claim for statutory indemnification against CAS is dismissed, but it is denied in all other respects. Additionally, CAS's Motion to Stay is granted in favor of the first-filed litigation in France.

I. **BACKGROUND**

　　A. **Factual Background**[1]

Plaintiff Louis Vuitton North America, Inc. ("LVNA"), a corporation organized under the laws of France, is in the luxury fashion retail business, importing and selling high quality purses, luggage, leather goods, clothing, and other accessories. (Am. Compl., Docket Entry No 15, ¶ 4.) Defendant Schenker S.A. ("Schenker") is a corporation organized under the laws of France and is engaged in business as a common carrier of cargo. (*Id.* ¶ 7.) Sometime prior to December 2015, LVNA entered into a Freight Forwarding Agreement ("Forwarding Agreement") with Schenker, pursuant to which Shenker was responsible for arranging the shipment of 403 cartons of Louis Vuitton brand purses, handbags, luggage, leather goods, and accessories (the "Cargo") from Paris to New York. Schenker issued air waybills[2] in connection with this shipment. (*Id.* ¶ 9.)

Schenker, in turn, subcontracted the Cargo's air carriage to Defendant Societe Air France S.A. ("Air France")[3] another French corporation engaged in business as a common carrier. (Am. Compl. ¶ 10.) The Cargo was to be shipped from Charles de Gaulle Airport ("CDG") in Paris to John F. Kennedy International Airport ("JFK") in Jamaica, New York. (*Id.* ¶ 12.) In connection with this shipment, Air France issued air waybills to cover the Cargo's carriage from CDG to JFK. (*Id.* ¶ 13.)

---

[1]　　The following facts are drawn from the Amended Complaint filed in this action and are presumed true for purposes of determining the motions to dismiss.

[2]　　An "air waybill" is a document required to be issued with respect to the carriage of cargo under the Montreal Convention. *See*, Montreal Convention, art. 4.

[3]　　Air France states that its true name is Societe Air France S.A. but was "sued incorrectly" as Air France. (Air France Ans., Docket Entry No. 19, at 1.) The parties have continued to refer to this entity as Air France, as will the Court herein.

Defendant Cargo Airport Services USA, LLC (d/b/a Consolidated Aviation Services)[4] ("CAS") is a limited liability company organized under the laws of Delaware with its place of business at JFK airport in New York. (*Id.* ¶ 14.) CAS is engaged in business as a cargo ground handler. (*Id.* ¶ 15.) Air France appointed CAS to act as its cargo ground handling agent at JFK to handle, transport, and store the Cargo pending its delivery to LVNA. (*Id.* ¶ 17.)

Schenker and Air France had issued so-called Air Automated Manifest System ("AIR AMS") documents in connection with the shipment of the Cargo. (*Id.* ¶¶ 31-33.) LVNA alleges that these AIR AMS documents

> (1) utterly or partially failed to identify the Cargo's marks, numbers, and number of pieces as required by those documents; (2) misidentified the number of the Airway Bills issued to cover the subject shipment; (3) partially failed to contain signatures required by those documents; (4) noted the wrong delivery date for the Cargo's release; (5) partially failed to confirm that U.S. Customs had authorized transfer of the Cargo as required by those documents; (6) were directed the [sic] "Port Director, New York NY" and only requested transfer of the Cargo but not release thereof from CAS's possession.

(*Id.* ¶ 31.) In addition to these errors, LVNA alleges that Schenker and Air France failed to safeguard the AIR AMS documents so they would not fall into the wrong hands. (*Id.* ¶¶ 32-33.)

On December 21, 2015, the Cargo was loaded aboard Air France's nominated aircraft at CDG, which thereafter carried the Cargo to JFK, landing there on December 22, 2015. (*Id.* ¶ 25.) Upon the Cargo's arrival at JFK on December 22, 2015, CAS picked up the Cargo from the Air France aircraft and transported it to CAS's warehouse at JFK, to be stored pending its release and delivery to LVNA. (*Id.* ¶ 28.)

At approximately 10:00 p.m. on December 22, 2015, three unidentified individuals (the "Suspects") arrived at the CAS warehouse. (*Id.* ¶ 34.) One of the Suspects entered the warehouse

---

[4] CAS was merged with and into Worldwide Flight Services, Inc. ("WFS") on March 31, 2017, (CAS Ans., Docket Entry No. 16, ¶ 14), and responds to this litigation purportedly as CAS's successor in interest. For ease of reference, the Court will herein refer to this party as CAS.

and produced a copy of one of the AIR AMS documents. (*Id.* ¶ 35.) CAS released the Cargo to the Suspects. (*Id.* ¶¶ 36-37.) LVNA alleges that the CAS employee "acted recklessly" by accepting this documentation and accepting the driver's license presented by one of the Suspects, which was not a commercial driver's license and contained a picture that differed from the actual appearance of the Suspect. (*Id.* ¶ 40-42.)

After the CAS employee authorized the release of the Cargo, the Suspects backed an unmarked and unlicensed truck up to a loading door of CAS's warehouse to load the Cargo. After the Suspects loaded the Cargo into their unmarked truck, they absconded. LVNA allegedly incurred losses totaling $767,906.54. (*Id.* ¶¶ 38-40.)

**B.    Procedural Background**

1.    <u>The France Litigation[5]</u>

On December 21, 2016, one year before filing the instant action, LVNA, Louis Vuitton Malletier, Louis Vuitton Malletier S.A., and their insurer, AXA Corporate Solutions Assurance, commenced proceedings against Schenker, Schenker France S.A.S., and Schenker Inc. before the Nanterre Commercial Court in Nanterre, France (*le Tribunal de Commerce de Nanterre*). (*See*, Heilig Decl. ¶ 3; Ex. A; Potier Decl. ¶ 7.)

One month later, Schenker France commenced a third-party action against Air France in the Nanterre court. The action was transferred to the commercial court in Bogigny, France, purportedly for jurisdictional reasons. (Heileg Decl. ¶ 6, Ex. B; Potier Decl. ¶¶ 8-11.) The third-

---

[5]    In support of its Motion to Stay, CAS provided the Declaration of Justin M. Heilig ("Heilig Decl." (Docket Entry No. 30-2)) and the Declaration of Benjamin Potier ("Potier Decl." (Docket Entry No. 30-3)) detailing litigation in the commercial courts in Nanterre and Bobigny stemming from the theft of the Cargo (the "French Litigation"). Attached thereto are purported summonses from two actions in the French courts. The following facts are taken from the Heilig and Potier Declarations and are accepted as true only for purposes of CAS's motion to stay.

party action in Bogigny subsequently was stayed pending the outcome of the primary proceedings in Nanterre. (Potier Decl. ¶ 13).

Finally, in April 2018, Schenker France commenced proceedings in the commercial court in Bogigny for reimbursement of money paid by Schenker France to a third party's insurer as a result of the theft. (*Id.* ¶ 15.)

### 2. This Litigation

On December 22, 2017, LVNA filed this action for statutory indemnification and breach of international air carriage contracts. (Complaint, Docket Entry No. 1.) On March 20, 2018, LVNA filed its Amended Complaint. (Am. Compl., Docket Entry No. 15) For its first cause of action, LVNA brings a claim for breach of contract and "statutory indemnification" against all Defendants under Article 10 of the Montreal Convention, which hold carriers and their agents liable for losses resulting from errors inserted in certain shipping documents. (Am. Compl. ¶¶ 57-70; *See also*, Montreal Convention, art. 10.) For its second cause of action, LVNA alleges a breach of the Forwarding Agreement against Schenker. (*Id.* ¶¶ 71-98.)

CAS answered LVNA's Amended Complaint on April 9, 2018. (CAS Ans., Docket Entry No. 16.) CAS admitted it had provided ground handling services to Air France at JFK, and that a CAS employee accepted an AIR AMS document presented to obtain the release of the Cargo. (*Id.* ¶¶ 15, 36.)

CAS asserted three affirmative defenses relevant to this motion. As its eleventh affirmative defense, CAS generally raised the defenses and limitations provided by the Montreal Convention. (*Id.* ¶ 110.) As its twelfth affirmative defense, CAS specified that the Montreal Convention preempts any state or federal common law claims asserted against CAS. (*Id.* ¶ 111.) As its thirteenth affirmative defense, CAS asserted that Article 22.3 of the Montreal Convention, which

5

limits a carrier's liability for damages to cargo, also protects CAS as the agent of the carrier acting "within the scope of its employment." (*Id.* ¶ 112.)

The next day, Air France filed its Answer. (Air France Ans., Docket Entry No. 19.) Air France's Answer also asserted affirmative defenses for preemption and limitations of liability under the Montreal Convention. (*Id.* ¶ 111, 113.)

On August 28, 2018, CAS filed its Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and moved to stay this action in favor of the France Litigation. ("CAS Mem.," Docket Entry 30-1.) LVNA opposed the motion. ("LVNA Opp'n," Docket Entry No. 31.) CAS filed a reply in further support of its motion. ("CAS Reply," Docket Entry No. 32.) CAS argues that it cannot be liable for statutory indemnification under Article 10 of the Montreal Convention because, by its terms, Article 10 does not apply. CAS also seeks a ruling on its affirmative defenses that: (1) any common law claims based on reckless conduct are preempted by the Montreal Convention, and (2) it is entitled to a carrier's limitation of liability because it was acting within the scope of its employment with a carrier. Also on August 28, 2018, Air France joined CAS's motion on the same grounds, but as applied to Air France. (Air France's Notice of Joinder, Docket Entry No. 33.)

## II. STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate only where all material facts are undisputed and, "a judgment on the merits is possible merely by considering the contents of the pleadings." *Mennella v. Office of Court Admin.*, 938 F. Supp. 128, 131 (E.D.N.Y. 1996), *aff'd*, 164 F.3d 618 (2d Cir. 1998) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). In all other respects, a

motion brought pursuant to Rule 12(c) is analyzed under the same standard applicable to a motion under Rule 12(b)(6). *See*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Thus, the Court's review is limited to the facts alleged or incorporated by reference in the complaint, documents attached to the complaint, and matters of which the Court may take judicial notice. *See*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Diamond v. Local 807 Labor-Mgmt. Pension Fund*, 2014 WL 527898, at *1 n.1 (E.D.N.Y. Feb. 7, 2014).

The Court assumes the truth of the facts alleged and draws all reasonable inferences in the nonmovant's favor. *See*, *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). To withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). Although the complaint need not contain "'detailed factual allegations,'" simple "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## III.  DISCUSSION

CAS and Air France move to (1) dismiss LVNA's claim for statutory indemnification under Article 10 of the Montreal Convention, and (2) enter judgment on their affirmative defenses that: (a) any common law claims that could be inferred from the Amended Complaint are preempted by the Montreal Convention, and (b) CAS's liability is limited to that of a carrier under Article 22.3 because it was "acting in the scope of its employment." CAS and Air France also

move to stay this action pending the outcome of the France Litigation. The Court addresses these arguments in turn.

### A. The Montreal Convention Applies

The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) ("Montreal Convention"), *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000), governs the uniform system of liability for international air carriers. *See*, *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). The Montreal Convention "replaces the system of liability that derives from the Warsaw Convention." *Id.* Although establishing a new system of liability, "'the Convention still retains many of its original provisions and terms and thus courts have continued to rely on cases interpreting equivalent provisions in the Warsaw Convention.'" *Glassman-Blanco v. Delta Airlines, Inc.*, 2016 WL 5017468, at *3 (E.D.N.Y. Feb. 3, 2016) (quoting *Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp.2d 261, 269 (E.D.N.Y. 2013).

The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention, art. 1.1. "*[I]nternational carriage* means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two States Parties." *Id.* art. 1.2.

There are currently 129 signatories to the Montreal Convention, including France and the United States.[6] The parties here do not dispute that the Montreal Convention applies to the shipment and alleged loss of the Cargo, and the Court agrees.

---

6   *See*, ICAO's website at: https://www.icao.int/secretariat/legal/List%20of%20Parties/Mtl99_EN.pdf

8

Under Article 18, entitled "Damage to Cargo," a carrier "is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during carriage by air." *Id.* art. 18. "Carriage by air" is extended to comprise "the period during which the cargo is in the charge of the carrier." *Id.* The Montreal Convention also applies to theft. *See, e.g.*, *Coppens v. Aer Lingus Ltd.*, 2015 WL 3885742 at *2 & 9 (E.D.N.Y. June 22, 2015); *Batteries "R" Us Co. v. Fega Express Corp.*, 2015 WL 4549497 at *3 (S.D. Fla. July 27, 2015).

Article 29 of the Montreal Convention explains its preemptive nature:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention[.]

Interpreting Article 29's predecessor under the Warsaw Convention, the Supreme Court in *El Al Israel Airlines v. Tseng*, 525 U.S. 155, 175 (1999), held that this provision "precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *See also*, *King v. Am. Airlines, Inc.*, 284 F.3d 352, 357 (2d Cir. 2002) ("The Supreme Court in *Tseng* held that the Convention's preemptive effect on local law extends to all causes of action for injuries to persons or baggage suffered in the course of international airline transportation, regardless of whether a claim actually could be maintained under the provisions of the Convention.").

Applying the Warsaw Convention, the Second Circuit has held that "[a]ll state law claims that fall within the scope of the Convention are preempted." *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 141 (2d Cir. 1998). "Because the two conventions' preemptive language is substantially similar, they have substantially the same preemptive effect." *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp.2d 447, 453 (E.D.N.Y. 2007) (internal citation and quotation marks

9

omitted). Thus, it is well settled that, if one of the Montreal Convention's three damage provisions applies, "the Convention provides the sole cause of action under which a claimant may seek redress for his injuries." *Seagate Logistics, Inc.*, 699 F. Supp.2d at 505 (quoting *Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp.2d 361, 365 (S.D.N.Y. 2006)).

CAS interprets the Amended Complaint as asserting common law tort claims based on reckless conduct. The complaint states no such causes of action, and LVNA does not argue in support of common law claims in its opposition papers. Thus, the Court denies CAS's motion as unnecessary.

### B. The Statutory Indemnification Claim

"When interpreting a treaty, [courts] begin with the text of the treaty and the context in which the written words are used." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (internal quotations and citations omitted). "Other general rules of construction may be brought to bear on difficult or ambiguous passages." *Id.* at 700. "If the words of the [treaty] are reasonably susceptible of only one interpretation, [the court's] task of interpretation ends there." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 375 (2d Cir. 2004) (internal quotations and citations omitted).

Count 1 of the Amended Complaint asserts a claim for "statutory indemnification" under Article 10 of the Montreal Convention on the theory that Defendants are liable for errors in the creation and handling of the AIR AMS documents that eventually led to their use in the theft. Article 10, entitled "Responsibility for Particulars of Documentation," assigns liability to a carrier for any errors it inserts in certain documents:

> the carrier shall indemnify the consignor against all damage suffered by it . . . by reason of the irregularity, incorrectness or incompleteness of the particulars and statements *inserted by the carrier or on its behalf* in the cargo receipt or in the record preserved by the other means referred to in paragraph 2 of Article 4.

Montreal Convention, art. 10 (emphasis added). Article 4 states in its entirety:

> 1. In respect of the carriage of cargo, an *air waybill* shall be delivered.
>
> 2. Any other means which preserves a record of the carriage to be performed *may be substituted for the delivery of an air waybill*. If such other means are used, the carrier shall, if so requested by the consignor, deliver to the consignor a cargo receipt permitting identification of the consignment and access to the information contained in the record preserved by such other means.

*Id.* art. 4 (emphasis added).

CAS argues that the pleadings fail to state a claim for statutory indemnification because Article 10: (1) does not apply to CAS as there is no allegation that CAS "inserted" any information into the AIR AMS documents created and issued by Air France and Schenker; and (2) cannot apply to any of the Defendants because Air France and Schenker provided air waybills, to which Article 10.3 does not apply. Each of these contentions is addressed in turn.

### 1. Article 10 Does Not Apply to CAS

LVNA alleges that the Suspects stole the Cargo from CAS's warehouse on the night of December 22, 2015 by presenting a copy of an AIR AMS document and an illegitimate driver's license to obtain its release. (Am. Compl. ¶¶ 34-38.) LVNA alleges that the theft was possible because Defendants "knowingly and recklessly issued or accepted multiple, irregular, inconsistent, and incomplete AIR AMS [d]ocuments." (*Id.* ¶ 68.) The Amended Complaint states that Schenker and Air France *issued* the documents, and CAS *accepted* them. (*Id.* ¶¶ 8, 11, 31-33.) Similarly, in its Opposition, LVNA does not assert that CAS issued the documents. (*See generally*, LVNA Opp'n.)

The words of Article 10 state that a carrier must indemnify for damages suffered "by reason of the irregularity, incorrectness or incompleteness of the particulars and statements *inserted by the carrier or on its behalf* in" certain documents. Convention, art. 10 (emphasis added.) The

11

Amended Complaint contains no allegation that the documents were issued by CAS or on CAS's behalf, and, thus, CAS cannot incur liability under Article 10 for documents it did not issue.

Nonetheless, LVNA argues that the AIR AMS documents were issued "on behalf of CAS" because Schenker or Air France issued them "to facilitate CAS's performance of its duties and the ultimate release of the Cargo." (LVNA Opp. at 5.) It states that the documents "were issued on CAS's behalf insofar as they were necessary for CAS to fulfill its contractual charge." (*Id.*) LVNA's reading does not comport with the ordinary meaning of the words of Article 10.

The Montreal Convention does not include a definition of "on behalf of." As such, the Court may provide the term its ordinary meaning. *See*, *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). The Merriam Webster Dictionary defines "on behalf of" as "in the interest of" or "as a representative of" another party. *See*, "o*n behalf of*," Merriam Webster On-Line, *available at https://www.merriam-webster.com/dictionary/on%20behalf%20of* (Last Visited Mar. 19, 2019). Similarly, Black's Law Dictionary defines the phrase as "acting in the place of someone else." "on behalf of," Black's Law Dictionary, http://thelawdictionary.org/on-behalf-of/ (last visited on March 21, 2016). There is simply no allegation that Schenker or Air France inserted allegedly incomplete or erroneous information into the AIR AMS Documents "in the place of" CAS or "in its interest" and LVNA marshals no serious argument to the contrary.

LVNA further attempts to impute Schenker and Air France's liability to CAS by resorting to Article 41 of the Montreal Convention. This argument is misplaced. Article 41, entitled "Mutual Liability," provides:

> 1. The acts and omissions of the actual carrier and of its servants and agents acting within the scope of their employment shall, in relation to the carriage performed by the actual carrier, be deemed to be also those of the contracting carrier.

> 2. The acts and omissions of the contracting carrier and of its servants and agents acting within the scope of their employment shall, in relation to the carriage performed by the actual carrier, be deemed to be also those of the actual carrier. . . .

Montreal Convention, art. 41. Thus, Article 41 of the Montreal Convention extends liability to contracting carriers for acts and omissions of the actual carrier and its agents (Convention, art. 41.1), and extends liability to actual carriers for the acts and omissions of the contract carrier and its agents (*Id.* art. 41.2). In other words, it addresses when the "acts and omissions" of the actual carrier and its agents (here, Air France and CAS, respectively) can be attributed to the contracting carrier (Schenker), and vice versa. Article 41 is concerned with attributing liability to carriers, not agents. It does not extend liability to an agent of an actual carrier (here, CAS) for the acts or omissions of either carrier.

Accordingly, LVNA's claim for statutory indemnification against CAS is dismissed.

### 2. Article 10 May Apply to Schenker and Air France

CAS argues that, in any event, Article 10.3 does not apply to any of the Defendants because the carriers issued "air waybills," to which Article 10.3 liability does not attach. Air France joins in this argument. If successful, it would shield Air France as a carrier from indemnification liability. Indeed, an air waybill does not trigger liability under Article 10.3. Article 10.3 states explicitly which documents trigger indemnification, providing that a carrier is liable for damages due to errors it inserts: (1) "in the cargo receipt," or (2) "in the record preserved by the other means referred to in paragraph 2 of Article 4," which describes means *other than* an air waybill.

CAS and Air France rely on the allegation that Schenker and Air France issued air waybills to cover the shipment of the Cargo. (Am. Compl. ¶¶ 9, 13.) The Amended Complaint alleges, however, that it was the AIR AMS documents, not the air waybills, that trigger Defendants' liability: "Schenker and Air France issued multiple, irregular, inconsistent, and incomplete [AIR AMS documents]." (*Id.* ¶ 31.) From the face of the pleadings, it is these documents that are the

13

basis of LVNA's claim, not the air waybills. (*Id.* ¶¶ 31-33, 35, 36, 65, 68.) Accordingly, CAS and Air France's motion to dismiss the statutory indemnification claim on this basis is denied.

Applying the text of the treaty to the facts here, CAS is entitled to judgment on LVNA's statutory indemnification claim and it is dismissed as to CAS only.

### C. CAS's Affirmative Defense Regarding Limitation of Liability

Article 22.3 generally limits the liability of a carrier to "a sum of [19][7] Special Drawing Rights per kilogramme." Montreal Convention, art. 22.3. Under Articles 30 and 43, the Montreal Convention's protections extend to the carrier's servants and agents "if they prove they acted within the scope of their employment." *Id.* art. 30(1) (emphasis added); *See also*, *Id.* art. 43; *Vumbaca v. Terminal one Group Ass'n L.P.*, 859 F. Supp.2d 343, 362 (E.D.N.Y. 2012).

CAS, as the ground handling agent, argues that the Court can find, from the face of the pleadings, that it was acting "within the scope of [its] employment" because "there is no allegation in the Amended Complaint that CAS acted outside the scope of its employment." (CAS Br. at 18.) It contends it is entitled to the protections of Article 30.1 as a matter of law based on LVNA's allegations that CAS acted as the carrier's ground handling agent. For the reasons that follow, the Court cannot determine at this stage of the proceedings whether CAS was acting within the scope of its employment and, therefore, CAS's motion is denied without prejudice.

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). However, "if a motion to dismiss a complaint raises matters outside the original pleading . . . the district court

---

[7] "Article 22 specifies 17 SDRs as the limit, Montreal Convention art. 22(3), but the Convention allows for periodic reassessment of the limit. Montreal Convention, Art. 24. After reassessment, the current limit for cargo is 19 SDRs." *Underwriters at Lloyds Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea Ltd.*, 882 F.3d 1033, 1036 (11th Cir. 2018).

14

is supposed to treat the motion to dismiss as a motion for summary judgment." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 664–65 (7th Cir. 2011). "Complaints can't be dismissed just because they ignore potential defenses; the time to deal with an affirmative defense is after it has been raised." *Id.* at 664 (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)).

CAS cannot meet its burden of establishing that it acted within the scope of its employment from the face of the pleadings. LVNA did not have a duty to plead the absence of this affirmative defense, nor is CAS's entitlement to it apparent from the face of the complaint. CAS relies on a number of cases for the proposition that "[r]eceiving, transporting, and storing cargoes are precisely the type of services that an air carrier's ground handling agent is supposed to provide." (CAS Br. at 18.) However, those cases were not decided on a motion to dismiss or motion for judgment on the pleadings standard. *See*, *Am. Home Assur. Co. v. Kuehne & Nagel (AG & Co.) KG*, 544 F. Supp.2d 261, 262 (S.D.N.Y. 2008) (summary judgment); *Danner, v. Int'l Freight Sys. of Washington, LLC*, 2013 WL 78101, at *1 (D. Md. Jan. 4, 2013) (post-trial opinion); *Croucher v. Worldwide Flight Servs., Inc.*, 111 F. Supp. 2d 501, 507 (D. N.J. 2000) (summary judgment).

LVNA "has no obligation to anticipate and refute potential affirmative defenses." *Rosen v. Brookhaven Capital Mgmt., Co.*, 194 F. Supp.2d 224, 227 (S.D.N.Y. 2002) (citing *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999)). The question of whether CAS was acting within the scope of its arrangement with the carrier Defendants is not properly before the Court at this stage of the litigation. It is CAS's burden to plead and prove that it acted within the scope of its employment.

Furthermore, because the Court declines to find that CAS was acting within the scope of its employment at this juncture, the Court refrains from deciding whether Article 22.3 applies, as

it is unnecessary at this time. Accordingly, CAS's motion for judgment on the pleadings for its thirteenth affirmative defense is denied without prejudice.

### D. Motion for Stay

CAS moves to stay this case pending resolution of the France Litigation. For the reasons that follow, CAS's motion to stay is granted.

The Court has the authority to "dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction." *Tarazi v. Truehope Inc.*, 958 F. Supp.2d 428, 432–33 (S.D.N.Y.2013). "The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

When deciding whether to stay a case in deference to a foreign proceeding, district courts should be guided by "proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal and Sun Alliance*, 466 F.3d at 94; *See also*, *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp.2d 198, 212 (S.D.N.Y. 2002).

The Second Circuit in *Royal and Sun Alliance* instructed courts to use a non-exhaustive list of factors when contemplating a stay in favor of a foreign proceeding, including: (1) the similarity of the issues; (2) the order in which the actions were filed; (3) the adequacy of the alternate forum; (4) the potential prejudice to either party; (5) the convenience of the parties; (6) the connection between the litigation and the United States; and (7) the connection between the litigation and the foreign jurisdiction. 466 F.3d at 94.

As an initial matter, LVNA incorrectly argues that the France Litigation is not a parallel proceeding. Parallel proceedings are those in which "substantially the same [parties are] litigating substantially the same issues" simultaneously in two fora. *Id.* As the Court already has noted, "parties in the suit where a stay is sought 'need not be the same [as in the foreign litigation], but they must be substantially the same, litigating substantially the same issues in both actions.'" (June 7, 2018, Docket Order (quoting *C.D.S., Inc. v. Zetler*, 198 F. Supp.3d 323, 331 (S.D.N.Y. 2016)).) All the parties to this action are present in the France Litigation, with the exception of CAS. Furthermore, the France Litigation concerns the same issues, property, and underlying fact pattern: the application of the Montreal Convention to the loss of the Cargo. Thus, this action is parallel to the France Litigation.

The Court now turns to the application of the *Royal and Sun Alliance* factors. LVNA concedes that the first two factors weigh in favor of a stay: (1) the underlying facts at issue are the same in each case, and (2) the France Litigation was filed a year before this action, and by the same plaintiff, LVNA.

The French courts presumably are more than adequate to resolve this dispute. France and the United States both are signatories to the Montreal Convention, which operates by its terms as the sole form of relief available to LVNA. *See*, *Delgado v. Delta Air Lines, Inc.*, 43 F. Supp.3d 1261, 1265 (S.D. Fla. 2013) ("France and the United States of America are signatories to the [Montreal Convention] and, as a result, the ability to enforce treaty provisions lies within both countries."). The fact that the French courts will be applying the same body of law as would this Court weighs in favor of staying this action. LVNA's argument that the French courts are inadequate because CAS is not subject to personal jurisdiction in France is insufficient, as CAS seeks only a stay of the case, and not outright dismissal. A stay does not preclude LVNA from moving to reopen this case at some later date.

With regard to prejudice and convenience to the parties, it is material that LVNA is the plaintiff in both actions and originally chose France as the forum when it commenced proceedings in Nanterre. LVNA cannot be prejudiced by its own choice of forum. *See*, *Ole Media Mgmt.*, 2013 WL 2531277 at *5 ("It is disingenuous for [plaintiff] to argue now that the [foreign] court will proceed too slowly on the claims it filed there.").

The Court next considers the connection the litigation has with either country. Three of the four parties are French companies. While the theft of the Cargo occurred in the United States, other actions bearing on this controversy took place in France, such as LVNA's delivery of the Cargo to CDG airport. To that end, it is probable that material witnesses and evidence are located in France. This factor is neutral.

The Court finds that a stay in this action is appropriate to avoid the duplicity of multiple fora and to promote judicial economy. LVNA chose the French courts as its preferred forum approximately one year before filing this action. That it now regrets that decision, or how the France Litigation has proceeded, is no reason to allow LVNA to start anew here, especially when there is a significant nexus to France, and France is bound by the same treaty.

Accordingly, this action is hereby stayed and administratively closed. LVNA may move to reopen this action once the France Litigation has been disposed of.

## IV. CONCLUSION

For the reasons set forth above, CAS's Motion for Judgment on the Pleadings is denied in part and granted in part. The motion is granted to the extent that LVNA's claim for statutory indemnification against CAS is dismissed, but it is denied in all other respects. Additionally, CAS's Motion to Stay is granted in favor of the first-filed litigation in France. Accordingly, this action is administratively closed without prejudice to LVNA to move to reopen upon disposition of the France Litigation.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2019

/s/
DORA L. IRIZARRY
Chief Judge